JUSTICE TRIEWEILER,
dissenting:
I dissent from the opinion of the majority.
This Court has gotten to the point where it automatically admits opinion testimony of law enforcement personnel in auto accident cases without adequate scrutiny of whether the testimony serves any of the purposes for which opinion testimony is normally allowed.
This is a simple case. Cassie Campbell was attempting to cross the highway when she was either struck by or ran into the vehicle being driven by the defendant. The issue is whether she negligently ran out into the street, or whether the defendant was negligent by failing to observe her and have his vehicle under sufficient control so that he could avoid her. If both were negligent, the issue was then how their negligence compared.
Including the parties, eight people witnessed the accident. The investigating officer, Dennis Palmer, was not one of them.
Some or all of these witnesses testified before the jury regarding their direct observations of how the accident occurred. Officer Palmer’s investigation and subsequent opinion based on that investigation added nothing to the direct observations of these witnesses. As will be shown, his opinion was based primarily on what he was told by the same witnesses who testified at trial.
When Officer Palmer arrived at the scene of the accident, the victim was lying in the street. The vehicle with which she collided had been moved and was parked further to the south. He marked her location on the street and called in another officer who took *18 photographs of the vehicle. He also recorded the names of the people who had witnessed the accident and later took statements from each of them.
Officer Palmer testified that normally if there are skid marks at an accident scene he can determine speed and direction from observing and measuring them. However, he could not find any skid marks at this accident scene.
He testified that he normally determines the point of impact from debris left on the road, but at this accident scene he found neither scuff marks nor debris in the vicinity where the accident occurred. Therefore, he was unable to determine a point of impact.
He examined the defendant’s automobile for damage, and based upon the damage that he observed, he determined the point where the victim’s body collided with the defendant’s vehicle. However, what he observed added nothing to what he had already been told by the witnesses to the accident. Furthermore, he could not tell from looking at the car whether the victim stepped into the car, ran into the car, or was merely standing in the street when she was struck by the car.
His entire investigation consisted of interviewing witnesses, observing the vehicle, looking for skid marks and debris, and observing the whereabouts of the victim when he arrived. However, it was clear that the only part of that investigation which in any way enlightened him about how the accident occurred, was his interview of the witnesses.
Although he had training and qualifications which would have enabled him to estimate speed and identify a point of impact if sufficient physical evidence had been available, none of that evidence was available. There was nothing in his background or training which enabled him to draw any better conclusion from having interviewed the witnesses than the jury was able to draw from listening to those same witnesses. In spite of these facts and this lack of foundation, he was allowed to express the following opinion during the trial:
“It’s my opinion that the accident was caused by the sudden movement of the pedestrian in the middle of the block out into the traveled portion of the road.”
Whether Officer Palmer was qualified as an expert in this case requires an analysis of more than whether he was a law enforcement person who investigated an accident. It requires an analysis of our rules regarding opinion evidence and how they apply to the facts in this case. Rule 702, M.R.Evid., controls. It provides as follows:
*19 “If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise.”
There was no scientific, technical, or other specialized knowledge which formed the basis for Officer Palmer’s opinion. His opinion was based exclusively on what he was told by the witnesses he interviewed.
This case is similar to Ployhar v. Board of Trustees (1980), 187 Mont. 363, 609 P.2d 1226. In that case, the victim of the accident was a student at Missoula Technical Center and enrolled in a heavy equipment operation class. At the time of the accident, he was working behind a Caterpillar being operated by another student when the Caterpillar reversed direction and ran over and crushed him. The victim’s family sued the school district for dangerous supervision and operation of the class.
One of the instructors at the school was called as a witness at trial and on cross-examination was allowed to give his opinion regarding the cause of the accident. We held that such opinion testimony was inappropriate and a basis for a new trial. In that opinion, we reached the following conclusion which is relevant to this case:
“Simms gave his opinion as to the proximate cause of the accident. Opinion evidence concerning the cause of an accident is admissible only if the subject matter is beyond the ordinary understanding of the jury. See Ziegler v. Crofoot (1973), 213 Kan. 480, 516 P.2d 954. The cause of the accident must be sufficiently complex to require explanation. See McGuire v. Nelson (1975), 167 Mont. 188, 536 P.2d 767; Massoni v. State Highway Commission (1974), 214 Kan. 844, 522 P.2d 973, 979. See also Dobkowski v. Lowe’s, Inc. (Ill.C.A.1974), 20 Ill.App.3d 275, 314 N.E.2d 623. Here, there was no need for such testimony. The accident was relatively simple. It involved a single tractor, and the actions of only two individuals, the driver of the tractor and the accident victim. At trial, an eyewitness gave his description of the accident, and other witnesses testified concerning the actions of the tractor driver and the decedent. This evidence appears to be sufficient to allow the jury to make an independent judgment as to the ultimate cause of the accident. Thus, we conclude there was no abuse of discretion in determining that opinion testimony was not needed here.
*20 “The Board contends that Simms’ testimony was not prejudicial to the plaintiffs’ case. However, the extent to which the deceased’s own actions caused the accident was obviously a crucial part of the Board’s defense. No other witnesses gave their opinion as to the cause of the accident. These circumstances support the trial court’s conclusion that Simms’ testimony was manifestly prejudicial to the plaintiff’s case.”
Ployhar, 609 P.2d at 1228.
We excluded opinion evidence for similar reasons in State v. Howard (1981), 195 Mont. 400, 637 P.2d 15. In that case, the defendant was charged with attempted homicide and other crimes of violence against the victim. The physician who attended the victim in the emergency room at the hospital testified about strangulation marks on her neck and other bruises and damage that he observed on her body. In addition, he was allowed to express his opinion that the force which caused the marks he observed was intended to cause her death. We held that whether he could express such an opinion depended on Rule 702 set forth above, and we explained the test for admissibility under Rule 702 as follows:
“Stated another way, the test is:
‘... whether the subject is one of such common knowledge that men of ordinary education could reach a conclusion as intelligently as the witness, or whether the matter is sufficiently beyond common experience that the opinion of an expert would assist the trier of fact.’ State v. Campbell (1965), 146 Mont. 251, 258, 405 P.2d 978, 983.
“Dr. Elliott inferred from the nature of the injuries that the person who inflicted them did so with an intent to murder. We find that under the circumstances of this case, the jury was as qualified as the doctor to draw an inference from the circumstantial evidence as to intent, and, therefore, the doctor’s opinion on intent was inadmissible under Rule 702, Montana Rules of Evidence.”
Howard, 637 P.2d at 17.
I find that both of these cases control the outcome in this case. In this case, the jury was as qualified as Officer Palmer to listen to the observations of the eyewitnesses to this accident and determine whether the accident occurred because of the victim’s sudden movement into the street or because the defendant failed to be sufficiently alert to avoid the victim when she crossed the street. The only things that Officer Palmer knew in addition to what he was told by those witnesses were the victim’s location when he arrived at the scene and the location of damage to the defendant’s vehicle. However, none of *21 that information contributed to the opinion that he was allowed to express regarding the cause of this accident.
The majority relies on Cline v. Durden (1990), 246 Mont. 154, 803 P.2d 1077, as authority for the admission of Officer Palmer’s testimony. However, the only similarity between that case and this case is that there was an opinion offered by a law enforcement officer. That case did not involve a pedestrian-vehicle collision on the main street through town in broad daylight with eight direct witnesses available to testify. The Cline case involved a head-on snowmobile collision in the mountains. The only two competent witnesses were the plaintiff and his companion. The defendant had no recollection of what happened due to the trauma that he suffered. The only issue involved the orientation of the vehicles and their direction of travel at the point of impact. The investigating officer was allowed to express an opinion on that issue based upon physical evidence, including debris and spilled gasoline found at the scene. The deputy’s opinion in that case was based directly upon his training in accident reconstruction and not on what he was told by any witness who testified at trial.
What this Court has gotten in the habit of doing is simply looking to see whether law enforcement personnel have training in accident investigation and reconstruction and then, based on that training, concluding that they are automatically qualified to express an opinion at trial without looking to see if that opinion is based upon the officer’s training or experience. For other examples of such non sequitur analysis, see Foreman v. Minnie (1984), 211 Mont. 441, 689 P.2d 1210, and Scofield v. Estate of Wood (1984), 211 Mont. 59, 683 P.2d 1300. This kind of analysis is inconsistent with our rules for all other expert witnesses and should be corrected.
The only thing that Officer Palmer added to this case beyond what the eyewitnesses had to offer was his opinion and his uniform. That was unfair. I would reverse.
JUSTICE HUNT concurs in the foregoing dissent of JUSTICE TRIEWEILER.